[L. A. No. 8927. Department One.—December 17, 1927.]

WILMA J. HYNES, Respondent, v. SYDNEY S. JACQUELIN, Appellant; MINNIE L. NYE, Defendant; CALIFORNIA TRUST COMPANY, as Administrator, Intervener and Respondent.

[1] DEEDS — FORGERY — SUFFICIENCY OF EVIDENCE. — In this suit to have it determined that a certain deed was forged, for an accounting for rent and to quiet title to the property described in the deed, it is held that the evidence was sufficient to sustain the findings and judgment in favor of the plaintiff.

[2] NEW TRIAL — NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVI-
DENCE—KNOWLEDGE OF EVIDENCE—INSUFFICIENT EXCUSE FOR DE-
LAY.—Where the affidavits on motion for new trial contain matters
that are merely cumulative and allege newly discovered evidence
of facts which were within the knowledge of affiants months
before the trial of the case and failure to present which, the
party alleges, was due to it having passed out of his mind, it
cannot be held that the trial court abused its discretion in denying
the motion.

[3] ID. — DISCRETION OF TRIAL COURT — APPEAL.—Trial courts are
granted a broad discretion in passing upon motions for new
trial based upon affidavits alleging newly discovered evidence and
their actions will not be disturbed unless a plain abuse of dis-
cretion is made to appear.

(1) 18 C. J., p. 449, n. 54.    (2) 29 Cyc., p. 891, n. 6.    (3) 4 C. J.,
p. 835, n. 67.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John L. Fleming, Judge. Affirmed.

The facts are stated in the opinion of the court.

James McLachlan and Paul Barksdale D'Orr for Appel-
lant.

Asa V. Call and J. Wiseman Macdonald for Respondents.

SEAWELL, J.—This appeal was taken from a judgment
decreeing a deed purporting to convey valuable property,
wherein appellant was the grantee and his wife, Jean Way
Jacquelin, since deceased, was the grantor, to be a forged
instrument, for an accounting of rents, issues, and profits,
and quieting title to said property described in said forged
instrument.

Decedent, Jean Way Jacquelin, a resident of the city
of Los Angeles, died in the city of Paris, France, on
August 30, 1920. By her last will and testament, executed
February 16, 1918, she disposed of an estate of considerable

2. Forgotten facts as constituting newly discovered evidence,
note, 17 Ann. Cas. 317. See, also, 20 Cal. Jur. 88; 20 R. C. L. 293.
Cumulative evidence as ground for new trial in civil cases, note,
L. R. A. 1916C, 1162. See, also, 20 Cal. Jur. 94; 20 R. C. L. 296.
3. See 20 Cal. Jur. 27, 215; 20 R. C. L. 227.

value, consisting of real and personal property, situate in this state and in the state of Illinois. Appellant was the husband of said decedent and respondent Wilma J. Hynes was an adopted daughter of decedent. Said will was admitted to probate in the superior court of the county of Los Angeles on October 20, 1920, and by its provisions the property which is the subject of this procceding, known as the home property of decedent, and located at 1019 Beacòn Street, and which comprised the bulk of said estate and was estimated to exceed fifty thousand dollars in value and yielded five thousand dollars per annum in rentals, was devised to said Sydney S. Jacquelin, appellant, for and during the term of his natural life, with remainder to said Wilma J. Hynes, respondent. Numerous other bequests and legacies were made by the testatrix which are not material to any isssue involved in the action. By a codicil to said will executed February 7, 1919, more than four months after the signing and delivery of the deed found by the court to be a forged instrument, the testatrix referred to the specific devise and bequest made to her adopted daughter and ratified and confirmed her will, which devised the fee of the property described in said forged deed to respondent, her daughter. All the rest, residue, and remainder of her said estate, including her real estate situate in the state of Illinois, was devised and bequeathed to her executor and trustee with full power to sell, transfer, and convert the same into money as he might be advised and with instructions to distribute the net proceeds to those certain persons named by said testatrix in her will. Her brother-in-law, Robert A. Burton, of Chicago, Illinois, was appointed by her as executor and trustee of her said will and estate, with the provision that in case of his death, the Chicago Title and Trust Company, a corporation organized and existing under and by virtue of the laws of the state of Illinois, should succeed to said trust. Robert A. Burton died pending the administration of his trust, and said corporation was, by an order subsequently made by the superior court of the county of Los Angeles, appointed to succeed as executor and trustee of said trust. Subsequent to the death of said Robert A. Burton the California Trust Company was appointed special administrator of the estate of said decedent with general powers to prosecute and defend

actions necessary for the preservation and protection of said estate. Said corporation, therefore, intervened, joining forces with respondent Wilma J. Hynes in the prosecution of this action to obtain a decree invalidating and canceling of record said deed purporting to have been executed by said decedent and conveying to appellant said Beacon Street property; for an accounting for the rents, issues, and profits thereof, and for other relief.

Appellant is a licensed physician and claimed to have given some attention to the study of the law. Decedent was the widow of the late Judge William J. Hynes. Respondent Wilma J. Hynes was the adopted daughter of Judge and Mrs. Hynes. Judge Hynes died in 1915, leaving to his wife all the property of which she died seised. During the year following the demise of Judge Hynes, his widow, who was then sixty-nine or seventy years of age, and appellant, who was then forty-three years of age, intermarried. The family, as then constituted, continued to reside at the family residence, the title of which constitutes the subject matter of this action, until June, 1920, when decedent accompanied her husband on a trip to Paris, France, where she died approximately two months thereafter. It was the persistent effort of appellant to defeat the provisions of the will dated February 16, 1918, whereby he was devised a life estate in the said Beacon Street property, with remainder over to decedent's adopted daughter, Wilma J. Hynes. Soon after said will was admitted to probate he filed a petition to revoke said will and offered for probate a purported unattested will by the terms of which he was devised the Beacon Street property in fee simple. In this proceeding he listed the Beacon Street property, to which he lays claim by virtue of the deed which he sought to establish by this latest proceeding, as property of the decedent. His petition in said probate matter was in all respects denied. On December 1, 1920, appellant filed and offered for probate another alleged will, which purported to have been executed by decedent at New York City while she was sojourning there en route to Paris. This purported will bore the formalities of attestation, but upon being put to the test it was found by the court to be a forged instrument.

By his petition to probate said will appellant again listed said Beacon Street property as property belonging to said

estate. Defeated in his attempts to establish as the will of decedent any of said offered papers which he claimed to be testamentary in character, appellant petitioned the probate court to set aside to him as a homestead said Beacon Street property. His petition was denied. The several attempts made by appellant to defeat the provisions of said will devising said property to Wilma J. Hynes, and to acquire it for himself by the methods above pointed out, are absolutely inconsistent with a well-grounded conviction or belief on his part that he held title absolute to said property by any deed of conveyance executed by decedent and delivered to him. The claim of title under said deed is the latest effort of appellant to establish in himself absolute ownership in said property. His story, briefly told, is that on the first day of October, 1918, his wife handed him the deed and said: "Here is a little present for you." She suggested that he have it typewritten. In response to her suggestion he put it into typewritten form and, at the request of decedent, he called Miss Avery, who had been decedent's secretary for some time past, to witness decedent's signature. Decedent sat down and very slowly and deliberately signed the deed and Miss Avery signed as a witness. Three or four weeks thereafter appellant and his wife went to the office of George H. Seward, a notary public, and had him attach his certificate of acknowledgment. Appellant then placed the deed in a desk with his private papers. In May, 1920, appellant became aware that the deed was lost. It is the testimony of appellant that he and decedent searched frantically for two or three weeks for the deed, but were unable to find it. On August 4, 1921, something like a year and three months thereafter, he informed Miss Avery of the loss and she suggested to him that it might be in a little lacquered Japanese box. The box was discovered by him in the attic or storeroom locked and the key to it was lost. Appellant took the box to a locksmith who opened it. Upon discovering the deed as a part of the contents of the box appellant testified that in his excited state of mind he exclaimed, "Good Heavens; there is the deed that my wife gave me in 1918, which I thought was lost." Upon the discovery of the deed in the manner as related it was found that it did not contain the notary's certificate and there was no evidence of an impress of said

notary's seal upon the instrument. Appellant was unable to account for the absence of a notarial certificate except upon the theory that the impress of the seal was made only upon the certificate and it had in some way become detached from the deed. It then became necessary to establish the execution of the instrument with the aid of the alleged subscribing witness. (Secs. 1195, 1196, Civ. Code.) This appellant set about to do. A few days thereafter, accompanied by a second notary public, he visited Miss Avery and informed her that he had found the deed in the little box which he had examined upon her suggestion and he requested her to make oath to the genuineness of her own and decedent's signatures, which, he claimed, she did, and said second notary thereupon attached his certificate of acknowledgment thereto. The notary public corroborated appellant to the extent that Miss Avery identified Mrs. Jacquelin's signature as the grantor and her own signature as a witness, to be genuine. When called as a witness, however, she denied that she had identified her name which appeared as a witness to the execution of the deed or that the subject matter had ever been brought to her attention. She admitted that the signature in some respects resembled her handwriting, but denied that she ever knowingly affixed her name to a deed whereby Mrs. Jacquelin conveyed any property to appellant. She also testified that the signature purporting to have been subscribed by Mrs. Jacquelin did not resemble her signature nor was the name affixed to the deed as the grantor therein the name which Mrs. Jacquelin was in the habit of using in signing documents. It was her habit to subscribe herself "Jean Way Jacquelin." The name affixed to the deed was "Jennie M. Jacquelin." Upon the stand the witness absolutely repudiated the genuineness of both signatures to the deed. Her testimony is in sharp contradiction of appellant's claim that she took any part in the procurement of the deed as a witness or otherwise. She also claimed that appellant, in the company of the notary whom he produced to take her acknowledgment, insisted that she identify said signatures as genuine, but she refused to do so. In addition to the very important testimony given by this witness, which tended to establish the fraudulent character of the deed, four or five other witnesses called by the respondents testified that the signature pur-

porting to be the signature of Mrs. Jacquelin was clearly a forgery. Among this number one was a professional handwriting expert and four were officials connected with various Los Angeles banking houses. The reasons assigned for their opinions are quite convincing.

[1] The purposes and intentions of decedent, as shown by her expressed wishes and conduct, tend strongly to rebut the claim of appellant that decedent intended that he should become the absolute owner of the residence property to the exclusion of any right of ownership whatsoever in her adopted daughter. Such a conclusion is not only inconsistent with the testimony, but with the logic of the situation.

It is a fact that the appellant himself admitted that the signature to the deed did not resemble ordinarily Mrs. Jacquelin's signature and he would be unable to identify it as hers except for the fact that he was a witness to it. The handwriting expert called by appellant weakened considerably the value of his testimony by stating that Mrs. Jacquelin's signature had the appearance of having been "drawn," rather than written by a free-hand motion. It is true that appellant produced witnesses who testified to matters which, if credited by the court, had a tendency to establish the genuineness of the deed, but this evidence was, in the opinion of the court, overcome by evidence more convincing and satisfactory.

[2] Two affidavits, one by appellant and the second by Adelaide Day Shorb, were presented on motion for a new trial. It is claimed that these affidavits set forth newly discovered evidence sufficient in probative effect to have compelled the granting of a new trial. The matters therein set out are cumulative in effect merely. Besides this the alleged newly discovered evidence was, according to the averments of affiants, facts which were within the knowledge of affiants months before the trial of the case. The excuse urged for failure to present Adelaide Day Shorb as a witness at the trial is that the matters which she and appellant had discussed several months prior to the trial had passed out of his mind. [3] Trial courts are granted a broad discretion in passing upon motions for new trial based upon affidavit alleging newly discovered evidence and their action will not be disturbed unless a plain abuse of discretion is made to appear. No such showing is made here. A con-

clusive answer to appellant's motion is that the testimony of the absent witness, if accepted as true, would have no weight whatever in overturning the findings of the court that the deed was a forged instrument. As to the genuineness of the signatures which appeared upon the paper which she claims to have seen she expresses no opinion, and if she did it would simply be cumulative evidence addressed to a disputed fact.

The instant case is one of evidence solely and the trial court was the judge of the credibility of the witnesses, and of the weight, effect, and sufficiency of the evidence adduced. It being sufficient to sustain the judgment, this court would not be warranted in disturbing it.

Judgment affirmed.

Preston, J., and Curtis, J., concurred.